23851

In the Matter of Frederick K. JONES, Respondent.

(437 S.E. (2d) 10)

Supreme Court

*Atty. Gen. T. Travis Medlock, Deputy Atty. Gen. John P. Wilson,* and *Asst. Atty. Gen. James G. Bogle, Jr.,* Columbia, *for complainant.*

*Frederick K. Jones, pro se.*

Heard March 10, 1993.

Decided May 3, 1993. Refiled July 19, 1993.

*Per Curiam:*

We granted Respondent's petition for rehearing to modify our prior opinion regarding his handling of the subrogation claim. The original opinion is hereby withdrawn and the following opinion substituted therefor.

In this attorney disciplinary matter, Respondent is charged with violating the Code of Professional Conduct, Rule 407, SCACR. The Panel of the Board of Commissioners on Grievance and Discipline (Panel) found Respondent had engaged in misconduct and recommended a public reprimand. The Executive Committee voted unanimously to adopt the

Panel's report and also independently recommended a public reprimand. We agree and impose a public reprimand.

The matter arises out of Respondent's representation of complainants Mr. and Mrs. Claude Coleman. On January 24, 1986, the Colemans were involved in an automobile accident with William Parsons. Mr. Coleman was turning left on a two-lane road and Parsons was attempting to pass him on the left. Mrs. Coleman injured her left knee requiring two surgeries. The Colemans sought representation from Respondent in various matters relating to the accident.

### Mr. Coleman's Traffic Citation

Following the accident, Mr. Coleman was given a traffic citation for making an illegal left turn. Respondent successfully represented Mr. Coleman in magistrate's court by arguing Mr. Coleman had used his turn signal and, therefore, the left turn was legal.

On November 3, 1986, Respondent filed a civil action on behalf of Mrs. Coleman against Mr. Coleman and Parsons. In the complaint, Respondent alleged Mr. Coleman was negligent because he had failed to properly use his turn signal. The Panel was troubled by the contradictory positions which Respondent took in the two actions. Respondent testified he did not see any contradiction at the time.

Clearly, Respondent having successfully argued to the magistrate that Mr. Coleman had made a proper left turn should not thereafter have alleged in circuit court in a civil action that Mr. Coleman was negligent in making the turn.

### Mrs. Coleman v. Mr. Coleman and Parsons

Mrs. Coleman alleged in her complaint that Respondent was not diligent in pursuing her claims. The Panel found the delays were a result of Mrs. Coleman's ongoing medical treatment and did not prejudice her. While we agree with the Panel that Mrs. Coleman was not prejudiced in this case, we find Respondent's actions are illustrative of his lack of diligence in pursuing his clients' interests which is more fully discussed below in regard to another matter.

The action was filed in November 1986. Opposing counsel sent Respondent interrogatories on December 11, 1986. On December 17, 1986, Respondent sent opposing counsel a letter

informing him the answers would be forthcoming. Following a four-month delay by Respondent in filing answers to the interrogatories, opposing counsel moved for a motion to compel discovery in April 1987. Thereafter, Respondent was granted a dismissal pursuant to Rule 40(c)(3) in May 1987. Respondent alleges Mrs. Coleman was having additional surgery requiring a delay in the trial.

On June 19, 1987, the case was restored to the roster. After requesting discovery in August 1987, opposing counsel made another motion to compel discovery in December 1987. Whereupon Respondent finally responded to the interrogatories. The case was settled in March 1988. Respondent explained that opposing counsel already had the information because he had sent him the medical bills. Further, he stated it was a "matter of [opposing counsel] wanting the form over the substance."

*Mr. Coleman v. Parsons*

Respondent filed an action on behalf of Mr. Coleman against Parsons for damage to his car and loss of consortium in June 1988. Respondent discovered later there was no loss of value in the car and no loss of consortium. The action was eventually dismissed in May 1989 without prejudice. The judge ordered Respondent was to be sanctioned $300.00 if the action was ever refiled. Mr. Coleman testified he was never informed of the possible sanction.

Opposing counsel sent a request for the production of documents and interrogatories in August 1988. An order compelling Respondent to answer these interrogatories by January 18, 1989, entered on January 11th. Respondent did not receive the order until January 16th or 17th, whereupon he informed opposing counsel he did not have adequate time to answer by the 18th. However, Respondent still had not answered by April 1989. Respondent contends he was unable to answer the interrogatories or continue with the action because Mr. Coleman had not suffered any loss.

Again, Respondent contends opposing counsel already had the information. Further, Respondent testified he did not know why he did not respond to the order compelling him to answer the interrogatories. Respondent violated the rules by failing to diligently prosecute this action.

*Blue Cross/Blue Shield Subrogation Claim*

Respondent agreed to represent Blue Cross/Blue Shield (BC/BS) which had a subrogation interest of $3,245.90 for medical bills it had paid on behalf of Mrs. Coleman. The Panel found a conflict of interest in Respondent's representation of both of these parties. An attorney may represent the insured and subrogee only upon disclosure and consent. It is unclear from the record if Respondent informed the Colemans of this representation. In any event, Respondent testified he did not see a conflict.

Respondent received a contingency fee based on the entire amount recovered by Mrs. Coleman, including the subrogated amount and then he received an additional percentage fee from BC/BS on the subrogated amount. We now hold that an attorney in this situation may not receive a contingency fee based on the entire amount recovered and additionally a percentage fee of the subrogated amount.[1] A proper procedure would be for the attorney to subtract the subrogated amount from the entire amount recovered before taking his fee from the insured's recovery. The attorney then could take a percentage fee from the amount allocated to the subrogee.

In addition, Respondent testified he was unaware of a possibility of a reduction of the subrogated amount. This would have directly benefitted Mrs. Coleman which would have conflicted with his representation of BC/BS. The Panel found Respondent should have been aware of the possibility of a reduction. Respondent violated the rules by failing to provide competent representation and failing to avoid a conflict of interests.

*Assignment to Heritage Financial Corporation*

Respondent also represented Mrs. Coleman in a settlement with a creditor, Heritage Financial Corporation (Heritage). Mrs. Coleman gave Heritage an assignment and release for a debt of $352.65 from any benefit she was to receive in her suit. After Mrs. Coleman settled with her husband and Parsons, Respondent withheld $352.65 in his escrow account. Respondent eventually paid the sum to Mrs. Coleman. Respondent

---

[1] Respondent subtracted his attorney's fees from BC/BS's subrogation claim amount of $3,245.90 leaving $2,163.54 to be withheld for BC/BS.

claims he did so because Heritage had failed to apply for any credit insurance Mrs. Coleman may have had at the time of the accident as required under the assignment and release.

Heritage pursued the insurance until it discovered the accident occurred prior to the debt and, therefore, there was not any coverage available. Respondent argues that Heritage's failure to apply for the insurance was a breach of the assignment and, therefore, he did not have an obligation to hold the money in escrow. Further, Respondent explained he disbursed the money to Mrs. Coleman because "Mrs. Coleman asked me for it." Respondent violated the rules by failing to keep the money separate until the dispute between Mrs. Coleman and Heritage was resolved.

### Escrow Account

Lastly, Respondent's escrow account disclosed a number of problems. Mrs. Coleman settled her action with Mr. Coleman and Parsons on March 23, 1988. Under the settlement agreement and disbursal statement, Respondent was to withhold $1,666.67 for Florence General Hospital; $522.40 for Florence Radiological; $352.00 for Heritage; and $2,163.54 for BC/BS. However, Respondent did not disburse these funds until September 7, 1990. During the interim, Respondent's escrow account balance had fallen below the amount he had withheld to pay these claims.

Respondent offered evidence that a former employee, Beth Wilkes, had embezzled money from him. Two of Wilkes previous employers testified as to money missing from their businesses and suspecting Wilkes. Respondent testified he wrote the checks to the hospital, radiologist, and BC/BS soon after the settlement and Wilkes must have destroyed the checks and taken the money by either writing herself checks which she would then void in the register or by writing excessive payroll checks.

Wilkes began working for Respondent in June 1988, which was three months after the settlement was reached in March. Respondent explained he had a policy of not immediately distributing funds because on a prior occasion an insurance company had stopped payment on a settlement check. Even if this was a valid excuse, within three months the check would have cleared and Respondent should have disbursed the funds

prior to Wilkes' employment.

The Panel found no willful misfeasance but found Respondent had clearly abdicated his responsibilities in regard to the trust account. There was a lack of evidence to prove any further mishandling of the account.

In conclusion, the Panel found Respondent had not intentionally or knowingly violated the rules. The Panel concluded the violations were the result of ignorance and inattention. Respondent was experiencing many personal problems during this time period. The Panel found these problems explained Respondent's inattention but did not excuse it.

We found Respondent violated the following:

> 1) Rule 3.3(a)(2) (a lawyer shall not knowingly fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client);
>
> 2) Rule 3.3(a)(4) (a lawyer shall not knowingly offer evidence that the lawyer knows to be false);
>
> 3) Rule 1.3 (a lawyer shall diligently prosecute an action);
>
> 4) Rule 1.7 (a lawyer shall avoid conflict of interests);
>
> 5) Rule 1.1 (a lawyer shall provide competent representation); and
>
> 6) Rule 1.15 (a lawyer shall keep property of third persons or property in dispute separate from his own property).

Before this Court, Respondent repeatedly stated he was not guilty of any misconduct. We are deeply troubled by Respondent's attitude toward the interests of his clients and his inability to recognize they have been prejudiced by his acts. Without an understanding of the consequences of his actions, Respondent may have a difficult time correcting his behavior. We urge Respondent to carefully review the behavior for which we are reprimanding him to avoid any similar actions in the future. Based on the above findings, we hereby sanction Respondent with a

Public reprimand.